## AS TO VALIDITY OF AN EXCHANGE OF PROPERTY WITH AN AGED MAN.

Common Pleas Court of Franklin County.

Lewis C. Lepps, Administrator, v. Charles W. Bryson et al.

Decided, 1912.

*Adequacy of Consideration—Allegations as to False Representations, Duress and Senility—Right of an Administrator to Recover from One Who Dealt with His Intestate upon an Unfair Basis of Value.*

1. Where a man eighty-three years of age, having a wife and young children, desired on account of his infirm condition to give up his farm, which had a value of about $8,000, and was persuaded to exchange it for city property, which could be occupied by himself and family and some income derived from the renting of rooms, the fact that in the exchange he received a consideration of perhaps $2,000 less than he gave, does not constitute such gross inadequacy as would warrant a court in giving judgment for the difference in an action brought therefor by his administrator.
2. Mere inadequacy, or inequality in value between the subject-matter and the price, does not furnish basis for remedial effect, in the absence of inequitable incidents, or when the circumstances do not show the same to be so gross as to constitute fraud.
3. Where a transaction is claimed to have been induced by undue influence for an inadequate consideration, the remedy is equitable rescission. Failure to rescind promptly does not entitle one to maintain an action for damages for undue influence in the transaction.

*D. T. Ramsey* and *J. V. Lee*, for plaintiff.
*T. H. Clark*, contra.

Kinkead, J.

The question is whether or not the plaintiff has established by proof sufficient facts to constitute a cause of action, and whether a verdict should be directed in favor of the defendants.

The petition alleges:

"On or about the fifth day of August, 1908, said William F. Reed being the owner of seventy-three acres of land situated in

Perry township * * * the defendants induced and procured the said William F. Reed and Clara B. Reed, his wife, to sign an agreement in writing with them to sell and convey said lands to them by a deed of general warranty; in consideration whereof the defendants agreed to pay said Reed the sum of $1,500, and to convey to him the premises located on Frambes avenue in the city of Columbus. * * * Defendants paid said Reed the sum of $50 when said agreement was signed.

"On or about the 15th day of October, 1908, the defendants procured from said Reed a deed of conveyance for said lands which were free and clear of incumbrances, his wife joining therein. And the defendants at the same time paid to said Reed the sum of $1,450 and conveyed to him the said premises known as 56 Frambes avenue in the said city of Columbus.

"At the date of said agreement and of said deed the said lands of said Reed were of the value of $8,000, and the said Frambes avenue property was of the value of $3,500 and no more. Said agreement and said deed was procured by fraud of defendants in this, that at the dates of said instruments the said William F. Reed was eighty-three years old and infirm in body and weak in mind, and had long been and then was of weak mind, incapable of doing or attending to business, and not competent to make an agreement for the sale of his property or to execute a deed of conveyance therefor. All of which facts were well known to the defendants at the time of the signing of said agreement and of said deed.

"And at and before the date of the signing of said agreement the defendants falsely and fraudulently represented to said William F. Reed that said Frambes avenue property was worth $6,000, knowing that the same was not worth more than $3,500, and said statement was made with intent to deceive and defraud said Reed. Said Reed was wholly ignorant of the value of said property, and believed and relied upon said representations and was thereby induced to sign said agreement.

"After the signing of said agreement and before the execution of the deed, Frank P. Reed a son of said William F. Reed, informed the defendants that his father was eighty-three years of age, weak in body and mind, and almost blind, that he was wholly incapable of any dealings involving his property, and ignorant of the value of defendants' said property, and that his father's said lands were worth about $8,000, and that the Frambes avenue property was worth less than $4,000; that the consideration to be paid by defendants was grossly inadequate and that the sale would be a fraud upon said William F. Reed, and warned them against procuring or taking a deed from him.

"After signing said agreement said William F. Reed, having learned that the said representations of defendants as to the value of their said property were false, refused to sign said deed; whereupon the defendants threatened that he would be adjudged insane and taken to the asylum for the insane, if he would not execute the same, by reason whereof and through fear and apprehension thereof, and by reason of mental weakness said Reed executed the said deed.

"Said lands were sold and conveyed by the defendants on or about February 27th, to the name of said William F. Reed of $3,000," for which judgment was asked.

This court, on general demurrer to the petition, ruled that it did not contain facts sufficient to constitute a cause of action. This ruling was based upon the theory that it having been stated in the petition that the alleged false representations which induced the making of the contract had been discovered to be false, and being, therefore, known to Reed, that he could not claim anything on account of such falsity because he had gone ahead and executed the deed of conveyance with knowledge of such falsity.

This court also ruled that the allegations of duress and mental incapacity were inconsistent with the allegations of fraud; in other words, that there had been a duplicate statement of a single cause of action, which was ground for demurrer, and that the facts stated were not sufficient to constitute a cause of action. The demurrer was accordingly sustained and the action dismissed.

The case was taken to the circuit court and reversed. In the opinion of the circuit court it was stated:

"It may be conceded that the false representations in reference to the value of properties are not sufficient foundation to support a cause of action, because of the admission that Reed, the decedent, had full knowledge of their falsity before executing the deed. And, it may also be conceded that the threats set forth in the petition are not of themselves sufficient to constitute duress where mental unsoundness does not appear.

"In the case at bar there is a distinct and unequivocal averment of want of mental capacity to make the contract, and that the defendant had full knowledge thereof, and also that the execution of the deed was induced through fear of the threats and by reason of mental weakness. The averments, in our opinion,

as to mental weakness lay a sufficient foundation for impeaching the transaction.

"It is urged that there was no offer to restore on the part of plaintiff, and that this is a pre-requisite. It must be noted, however, that the defendant has conveyed away the real estate received by him, and therefore, the action on the part of plaintiff must be for money instead of the property. *Doney* v. *Clark,* 55 O. S., 294.

"The conveyance away of the property by the defendant obviates the necessity for an offer to restore on the part of the plaintiff, of the property the defendant received. Such offer would be a useless formality and one which the law does not require. The defendants having placed the property received by them out of their hands, it is competent for the plaintiff to bring an action for the difference in value.

"We are of the opinion that the cause of action here does not abate, but is capable of revivor under Section 4975."

In the trial of this case the plaintiff first disclaimed any intention of relying upon fraud. There was also a disclaimer of any intention to rely upon the threats or duress, as alleged in the petition.

Thereafter, plaintiff offered evidence to prove the alleged falsity of the representations claimed to have been made by defendants as to the value of the Frambes avenue property. The court sustained an objection to the introduction of such evidence on the ground, as stated in the circuit court opinion, that full knowledge of the falsity which the deceased Reed had would not be sufficient to warrant the action proceeding upon that theory. The mental attitude of the deceased Reed with reference to the alleged falsity of these representations must be considered either with reference to his being of sufficient mental capacity to act with reference to them, or as to his want of mental capacity by reason of his old age.

If he had sufficient mental capacity to comprehend and understand the transaction, he must be held to have not relied upon such representations, and hence, there could be no recovery on account of such alleged fraud. The ruling of the court was that the fraud could be shown, but that the action must proceed upon the theory that the conveyance was obtained by the defendants from the deceased Reed through threats and duress accompanied by mental incapacity. But having waived any claim with refer-

ence to the threats, there remained nothing in the action but the elements of alleged mental incapacity by reason of old age, and the adequacy or inadequacy of the consideration moving from the defendants to the deceased Reed in the sale and transfer of the property.

While the circuit court stated in its opinion that the action did not abate, but is capable of revivor under Section 4975, I think it a serious question whether or not an administrator has the right to maintain the action as it now stands with the elements of fraud and duress eliminated.

Under Section 11235:

"In addition to the causes which survive at common law, causes of action for mesne profits or injuries to the person or property, or for deceit or fraud, also shall survive; and the action may be brought notwithstanding the death of the person entitled or liable thereto."

What there is left in this action can not be considered as an injury to property. The administrator can have the right to maintain this action under this section only upon the theory that the transfer of this property by the deceased Reed to the defendants was made on the theory that he was mentally incapable of appreciating the nature and extent of the transaction, and that it was obtained from him by the defendant for a grossly inadequate consideration moving from them to him.

If there was any fraud in this transaction it would be by reason of the senility of the decedent and of the taking advantage of his condition and obtaining the transfer and sale of the property for a grossly inadequate consideration.

If there is any fraud in this transaction by reason of the facts just mentioned, it is to be considered as constructive fraud. Cases for relief on account of constructive fraud appeal to the jurisdiction of courts of equity, whereas actual fraud may give rise to an action by an administrator of a decedent against whom the same is practiced for the recovery of damages, and under the section of the code above quoted the same will survive. But it may well be doubted whether or not the administrator can maintain the action in this case for the recovery of damages, as in tort, on account of the alleged senility of the grantor and the inadequacy of the consideration moving to him.

It is stated by Pomeroy, Section 926, that:

"The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for cancelling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject-matter, courts of equity should not and will not interfere with such valuation. * * * The doctrine * * * is now well settled, that *mere* inadequacy—that is, inequality in value between the subject-matter and the price—is not a ground for refusing the remedy of specific performance; in order to be a defense, the inadequacy must either be accompanied by other inequitable incidents, or must be so gross as to show fraud." Section 926, Pomeroy Equity.

And again at Section 927, the same author says:

"Although the actual cases in which a contract or conveyance has been canceled on account of gross inadequacy merely, without other inequitable incidents, are very few, yet the doctrine is settled, by a consensus of decisions and *dicta,* that even in the absence of all other circumstances, when the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for cancelling a conveyance or contract, whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief."

Now the question in this case therefore, is, whether the inadequacy of the consideration in this transaction is so strong, gross and manifest as that it shocks the conscience and furnishes satisfactory and decisive evidence of fraud, and which, together with the alleged senility of the grantor makes out a case of fraud, for which action at law for damages may be maintained by an administrator.

It is said that there is a marked difference in the manner of practicing fraud or deception in cases redressable in law from those for which a remedy in equity is furnished—

"Fraud in law, and for which redress in damages is afforded, is intentional, or acts tantamount to intentional, while 'fraud in

equity includes all willful or intentional acts, omissions, and concealments which involve a breach of either legal or equitable duty, trust, or confidence, and are injurious to another, or by which an undue or unconscientious advantage over another is obtained.'

"Fraud, in equity, however, is generally not intentional falsehood, as it must be in law, but, on the contrary, consists in a breach of duty, or in taking advantage of a confidential relation, or in such acts or omissions as the law declares to be fraudulent in the absence of intentional falsehood or deception. It must be remembered, though, that equity has an original inherent and independent jurisdiction to relieve against every species of fraud, actual or constructive. So it follows that the chief difference in the manner in which fraud is dealt with by courts of law and of equity, is that the jurisdiction over constructive fraud is exclusive in equity, there being no remedy at law, although opinion is divided upon this in some cases. Intentional falsity is the chief distinguishing element between actual and constructive fraud, it always being an essential in actual, whereas it is not present in constructive, fraud." *Kinkead on Torts,* Section 715; citing *Wampler* v. *Wampler,* 30 Gratt., 454; *Holcomb* v. *Noble,* 69 Michigan, 397. See also Section 873, *Pomeroy's Equity,* see also Section 873, *et seq., Pomeroy's Equity.*

It is not meant to state here that relief can be afforded in equity against all kinds of fraud, but only to show that any inequitable conduct which is not accompanied by affirmative false representations is remedial in equity under the classification of constructive fraud.

An interesting, instructive decision touching upon the point of this case very closely is that of *Bancroft* v. *Bancroft,* 110 Cal., 374. The allegations of the complaint in that case were made up almost wholly of acts of duress which were charged as being the fraudulent inducement for the obtaining of certain transfer of stock in a corporation accompanied by an inadequacy of consideration. It was stated in the syllabus in that case that:

"Where a plaintiff has been led solely through the undue influence of the defendant to transfer stock in a corporation to the defendant for an inadequate consideration, the exclusive remedy in such a case is a prompt rescission of the contract, or an offer to rescind it, so as to put the other party *in statu quo;* and if he fails to rescind promptly, he thereby affirms the contract, and can not maintain an action for damages upon the ground of undue influence in procuring the transfer."

It is stated in the opinion of the court:

"It is admitted that no case can be found in all the books where a general action for damages has been maintained upon the ground of undue influence in procuring a sale or other contract. In *Le Caux* v. *Eden,* 2 Doug., 594, the question was whether an action at common law could be maintained for an imprisonment on a capture at sea *as prize,* and Buller, justice, said: 'There is no case in which it has ever been holden that such an action would lie; and if it could be maintained, there are, in every way, such frequent opportunities for it that it must have happened in every day's practice, or some instances at least must have been in the memory of those who have had long experience in "Westminster Hall"; but there is not the smallest trace of such a determination, or even *dictum,* in any court in England. A universal silence in Westminster Hall on a subject which so frequently gives occasion for litigation is a strong argument to prove that no such action can be sustained.' That case was decided in 1781, and dealt with litigation which could arise only out of the exceptional condition of war. How much stronger, therefore, is the authority of more than another hundred years of 'silence' in the courts of both England and America, upon a subject which, both in peace and war, 'so frequently gives occasion for litigation.' But in addition to this negative authority, it is clear upon principle that this present action should not be maintained, because to maintain it would be to violate the wholesome and fundamental doctrine that in such a case the party claiming to be aggrieved must promptly rescind, or offer to rescind, so as to put the other party *in statu quo.* He can not wait to speculate on future contingencies. The sale from appellant to respondent was not void; it was only voidable upon restoration of the consideration paid. It has been held, it is true, that an action to recover damages for a deceit or fraud will lie; *but that is on the ground that the party defrauded had no knowledge of the facts constituting the fraud.* [Italics ours.]

"The provisions of our Civil Code, all construed together, do not change the law on the subject. If it be said that a case could be imagined where the facts constituting the alleged undue influence *were not known* to the complaining party, and that there rescission should not be required, it is sufficient to reply that the case at bar is not such case."

I am much impressed with the argument of the dissenting opinion in the case just cited, and believe that "precedents go down before principles anyway," but I can not bring myself

to believe that after this transaction was had between the deceased Reed and the defendants, and after his continued enjoyment of the property during the remainder of his life (and as agreed by counsel here, the same has been divided among his heirs in partition subsequent to his death), that there is enough in the evidence here to warrant the submission of this case to the jury for the award of any damages against the defendants on the theory that there is a sufficient showing here to make out a case at law for the recovery of damages in tort.

The testimony offered is that the only affliction which the deceased Reed had was old age. It clearly appears that he exercised much precaution in making this transfer; he listed his property with a real estate agent for sale; he was anxious to get away from the farm because he was unable to work the farm on account of his age. He wanted some income property, something that would yield him a revenue without labor, because he was unable to work. He had a wife and two young children. When this property was offered to him for transfer, he took the precaution of having two competent real estate men give their opinions to him as to the value of the property which he was to receive in trade. The evidence shows that a report was made to him that the cash sale value of the property was $3,500, whereas the trading value was $3,750. With that knowledge he made the contract for the sale and exchange. Thereafter it appears that his son interfered in order to prevent him from transferring the property.

It would seem as though the desire to repudiate the transaction, if any he had, was more because of the attitude of his son than any notions of his own. It appears from the evidence that he made the transfer of the deed without any dissent, without any objection having been made. The desire to get rid of his farm which he was unable to handle, and to install his family in property which could be used for renting rooms, etc., may have been considered by him as a sufficient consideration in making the transfer.

The testimony as to the value of his farm is that it was worth between $7,300 and $8,000. The only difference between the values, so far as the evidence is concerned, would be in the neighborhood of $2,000. Many a person who is not afflicted

with senility has been willing to make a sale of property at a sacrifice for the purpose of changing their condition. I think that because of his situation, his old age, the fact that he had a young wife and young children, and of his desire to change his location from the farm to the city, in a house near the University where roomers could be obtained, tends to show that there was no such gross inadequacy of consideration as would even warrant a court of equity in setting the deed aside.

For these reasons, and because precedent seems to establish the rule that there is no remedy at law in damages for the alleged fraud that is now claimed from the evidence in this case, the motion to direct a verdict in favor of the defendants is sustained.